## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### Richmond Division

| | | |
|---|---|---|
| LINDA MAYO, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL NO. 3:10cv866-JRS |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## REPORT AND RECOMMENDATION

This matter is before the Court for a report and recommendation pursuant to 28 U.S.C.

§ 636(b)(1)(B) on cross-motions for summary judgment[1] and Plaintiff's motion to remand.

Plaintiff, Linda Mayo, seeks judicial review pursuant to 42 U.S.C. § 405(g) of the final decision

of Defendant Commissioner denying her applications for Social Security Disability ("DIB") and

Supplemental Security Income payments ("SSI"). The Commissioner's final decision is based

on a finding by an Administrative Law Judge ("ALJ") that Plaintiff was not disabled as defined

by the Social Security Act ("the Act") and applicable regulations.

For the reasons discussed herein, it is the Court's recommendation that Plaintiff's motion

for summary judgment (ECF No. 11) and motion to remand (ECF No. 12) be DENIED; that

---

[1] The administrative record in this case has been filed under seal, pursuant to E.D. Va.
Loc. R. 5 and 7(C). In accordance with these Rules, the Court will endeavor to exclude any
personal identifiers such as Plaintiff's social security number, the names of any minor children,
dates of birth (except for year of birth), and any financial account numbers from its consideration
of Plaintiff's arguments and will further restrict its discussion of Plaintiff's medical information
to only the extent necessary to properly analyze the case. E.D. Va. Loc. R. 5, 7(C).

Defendant's motion for summary judgment (ECF No. 14) be GRANTED; and that the final decision of the Commissioner be AFFIRMED.

## I. PROCEDURAL HISTORY

Plaintiff protectively filed her current applications for DIB and SSI on October 16, 2008, claiming disability due to diabetes, high blood pressure, loss of vision in her left eye, and arthritis in her neck. (R. at 204.) Plaintiff initially alleged that the disability's onset date was April 15, 2007. (R. at 8.) The Social Security Administration ("SSA") denied Plaintiff's claims initially and on reconsideration.[2] (R. at 96, 102, 104.) On December 23, 2009, represented by counsel, Plaintiff testified before an ALJ at which time she amended her disability onset date to April 25, 2008, so that it coincided with her fiftieth (50th) birthday. (R. at 25-88.) On February 12, 2010, the ALJ denied Plaintiff's application, finding that she was not disabled under the Act, because she retained residual functional capacity ("RFC") to perform her past relevant work as a housekeeper. (R. at 16.) The Appeals Council subsequently denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner subject to judicial review by this Court. (R. at 1-3.)

## II. ADMINISTRATIVE RECORD

In rendering his opinion, the ALJ considered and weighed the Plaintiff's testimony; medical records and written opinions of Plaintiff's treating physicians[3]; the written opinion of Christopher Newell, M.D., ("Dr. Newell"), a consultative physician who examined Plaintiff; and,

---

[2] Initial and reconsideration reviews in Virginia are performed by an agency of the state government -- the Disability Determination Services (DDS), a division of the Virginia Department of Rehabilitative Services -- under arrangement with the SSA. 20 C.F.R. Part 404, Subpart Q; *see also* § 404.1503. Hearings before administrative law judges and subsequent proceedings are conducted by personnel of the federal SSA.

[3] The Court does not summarize in detail the medical records of all of Plaintiff's treating physicians, but only those relevant to the particular issues raised on appeal, as well as those necessary for a general understanding of Plaintiff's physical and psychological limitations.

the written opinions of state agency physicians. Having reviewed the complete administrative record, the Court summarizes the relevant portions of such evidence as follows.

## A.   Plaintiff's Testimony and Exhibits

Plaintiff testified that she last worked as a housekeeper and has been unable to do so for some time as a result of her impairments. (R. at 39.) Specifically, Plaintiff stated that she cannot work, because she suffers from diabetes, high blood pressure, cervical degenerative disc disease, arthritis, and visual impairments.[4] (R. at 37, 42.) She acknowledged, however, that both her diabetes and high blood pressure are well-controlled, at least as of the date of the hearing. (R. at 38-39.)

Plaintiff also testified in some detail about her visual limitations. Plaintiff is blind in the left eye as a result of losing it in an accident when she was a child. (R. at 35, 325.) As for her right eye, she explained that she occasionally suffers from a "blurry" sensation in her remaining eye approximately two (2) times per day. (R. at 52-53.) The sensation lasts for just a few seconds and usually clears up from blinking and rubbing the eye. (R. at 53.) Regardless of the identified visual limitations, Plaintiff has never been told that she suffers from diabetic retinopathy.[5] (R. at 53.)

During a disability assessment interview with an employee of the Social Security Administration, Plaintiff indicated that her past relevant work as a housekeeper required her to walk five hours per day, stand for four and one half hours per day, stoop and crouch one half hour per day, and carry water buckets a distance of some forty-five (45) feet on three to five

---

[4] Plaintiff's medical records and testimony also indicate some history of depression, but it has not been argued on review that the ALJ erred in his finding as to how he accounted for her depression. (R. at 47; Pl.'s Br. at 15-22.)

[5] Diabetic retinopathy refers to the retinal changes that may result from diabetes mellitus. *Dorland's Illustrated Medical Dictionary* 1634 (32nd ed. 2012).

occasions per day. (R. at 206.) She also indicated that she must frequently lift as much as fifty (50) pounds while working as a housekeeper. (R. at 206.) As far as mobility is concerned, she testified that she can operate a car, although not at night, and that she can walk a distance of no more than one city block, but only with the aid of a cane. (R. at 39-41.) However, her other record evidence indicated that she can walk as far as one mile without rest. (R. at 230.)

**B.    Treating Physician Opinions and Records**

Plaintiff has been treated by a number of different physicians over the last several years. First, she was a patient at the Free Clinic of Goochland between August 2006 and November 2007, receiving treatment principally for her elevated blood pressure and diabetes. (R. at 275, 282.) According to those records, her blood pressure was under control as of September 7, 2006, but her diabetes was not as of March 14, 2007. (R. at 275, 282.) During her treatment at the Free Clinic of Goochland, she was also referred for an ophthalmological examination. (R. at 282.)

Plaintiff subsequently attended Family Physicians medical group, where she was treated for hypertension, stiffness in the neck, pain in her eye, and degenerative disc disease. (R. at 319-20.) She was also prescribed medication (but not insulin) for her diabetes. (R. at 320.) She was diagnosed with cervical degenerative disc disease as a result of an x-ray, but her spinal laminal line[6] was found intact, her prevertebral soft tissues[7] were found normal, and spinal alignment was found to be normal. (R. at 321-22.) Significantly, no functional limitations were noted, nor treatment recommended. (R. at 319-22.)

---

[6] The spinal laminal line refers to the thin flat plat or stratum of the vertebral column. *Dorland's* at 1000, 1749.

[7] Prevertebral soft tissues refer to those soft tissues located anterior to the vertebrae. *Dorland's* at 1514.

4

Plaintiff was thereafter examined at the Virginia Eye Institute ("VEI"). (R. at 325.) The treating ophthalmologist, Dr. Catherine Douglas ("Dr. Douglas"), noted that Plaintiff had lost vision in her left eye as a result of it being removed after a childhood accident. (R. at 325.) After examining the remaining (right) eye, Dr. Douglas concluded that it was functional, her right cornea clear, right eye chamber depth was within normal limits, right iris was within normal limits, and that the right lens was clear. (R. at 325.) She also determined that no eye disease existed as a result of Plaintiff's diabetic condition. (R. at 325.)

Beginning in March 2009, Plaintiff began to be treated by Barry Wein, M.D. ("Dr. Wein"), who would ultimately opine that Plaintiff is "[t]otally disabled from any work activity." (R. at 368.) His notes concerning her diabetes suggest that Plaintiff's condition could be controlled if she would stop eating bread, corn, and potatoes. (R. at 365.) Indeed, on December 10, 2009, another physician in Dr. Wein's practice — Thomas Hill, M.D. — noted that Plaintiff "has had significant improvement in her control" of diabetes. (R. at 363.) And although Dr. Wein indicated total disability as of January 21, 2010, he had previously indicated that her disability was "temporary" when he completed a disabled parking placard application on behalf of Plaintiff just months earlier. (*Compare* R. at 368 *with* R. at 371.)

Finally, on Dr. Wein's referral, Plaintiff was treated by Michael Strachan, M.D. ("Dr. Strachan"), beginning in May 2009. (R. at 372.) The purpose of the referral was to address Plaintiff's arthritic condition. (R. at 372.) Dr. Strachan ordered x-rays to be taken and he assessed Plaintiff's range of motion, particularly in her knees. (R. at 372.) Ultimately, he found no significant limitations, concluding that he observed "very little in the way of arthritis," but

that she probably has patellofemoral syndrome.[8] (R. at 372.) His recommended treatment was conservative, consisting of quad strengthening exercises and a back stabilization exercise program. (R. at 372.)

## C.    Consulting Physician Opinion

The ALJ gave great weight to the opinion of consulting physician Christopher Newell, M.D. ("Dr. Newell"), who examined Plaintiff on January 26, 2009. (R. at 14.) Dr. Newell made a number of findings that contradict those of Dr. Wein and Plaintiff's own testimony. First, he noted that Plaintiff did not need a cane or any other assistive device to walk. (R. at 330.) He also found that her gait was normal and that she could move herself onto the observation table without any assistance. (R. at 330.) While he found some slightly decreased cervical rotation, her upper and lower extremity strength was a full 5 for 5 and her sensory examination was within normal limits. (R. at 331.) And although he confirmed mild tenderness in Plaintiff's knees, he also concluded that she maintained good range of motion in her right knee and only mildly decreased range of motion in her left knee. (R. at 331.) Overall, he found that Plaintiff's neck, back, and knee pain could be relieved by application of heat, massage, and use of over-the-counter medications. (R. at 329.)

Dr. Newell also examined Plaintiff's right eye, her left eye having been lost in a childhood accident. (R. at 329.) He found that, with her prescribed corrective lenses in place, Plaintiff had 20/20 vision in her right eye. (R. at 331.) Accordingly, he did not find any limitation of the right eye. (R. at 331.)

Finally, although he did not conduct a psychiatric examination, Dr. Newell noted aspects related to Plaintiff's alleged depression. First, he noted that she has never been hospitalized for

---

[8] Patellofemoral disorder refers to a derangement or abnormality of function in the patella and the femur. *Dorland's* at 547, 1395.

any psychiatric condition.  Second, he noted that Plaintiff's depression appears to be well-controlled with prescription medication (Celexa).  (R. at 329.)

**D.      State Agency Expert Opinions**

As required by Social Security Ruling 96-6p, the ALJ considered the written opinions of state agency physician Tony Constant, M.D. ("Dr. Constant") and state agency psychologist Alan Entin, Ph.D. ("Dr. Entin").  (R. at 15.)  Upon complete review of Plaintiff's medical records, Dr. Constant concluded that Plaintiff could occasionally lift and carry twenty pounds; frequently lift and carry ten pounds; stand and walk about six hours in an eight-hour workday; sit about six hours in an eight-hour workday; push and pull in an unlimited capacity; occasionally use ramps and climb stairs; balance; stoop; kneel; crouch; and crawl.  (R. at 333-37.)  However, he also opined that she should never climb ladders, ropes, or scaffolding, and should avoid moderate exposure to hazards such as machinery and heights.  (R. at 333-37.)  Indeed, Dr. Constant specifically reviewed Dr. Newell's assessment and concluded that it was not consistent with the medical records in that Plaintiff could stand and walk more than four hours in an eight-hour work day.  (R. at 338-39.)

Concernning Plaintiff's visual limitations, Dr. Constant marked boxes on a form indicating limited near acuity, far acuity, depth perception, accommodation, and field of vision.  (R. at 335.)  However, in explaining such limitations, he noted only that Plaintiff lacks a left eye, her right eye was tested at 20/20, and that no signs of retinopathy exist.  (R. at 338.)  Dr. Constant's opinions were reviewed and confirmed by a second state agency physician, Robert Chaplin, M.D.  (R. at 357.)

Dr. Entin examined Plaintiff to assess her psychological limitations.  (R. at 344-56.)  Ultimately, he found her statements to be partially credible.  (R. at 356.)  And although Dr. Entin

7

does not dispute the diagnosis of depression, he notes that her depression is well controlled by Celexa and that her mood and affect are generally normal. (R. at 356.) Accordingly, Dr. Entin concluded that Plaintiff's psychological impairments are not severe. (R. at 344.)

**E.   Vocational Expert**

The ALJ called a vocational expert ("VE") to testify at the hearing. First, the VE considered Plaintiff's past relevant work as a housekeeper, dietary aide, and shuttle driver. Although he concluded that the dietary aide and shuttle driver positions involved medium levels of exertion, she concluded that the housekeeper employment was unskilled and in the light duty category of labor. (R. at 60.)

The ALJ also posed two hypotheticals to the VE and asked her to opine as to any available employment in the national and regional economy that Plaintiff could perform. The first hypothetical was provided as follows:

> [A]ssume a hypothetical individual the claimant's age, education and work experience. Assume that this person can lift and carry ten pounds frequently and twenty pounds occasionally. That she can stand or walk six hours in an eight hour workday or sit six hours in an eight hour workday. Assume that there are no limitations on pushing or pulling. She cannot climb ladders, ropes or scaffolds, but can occasionally climb stairs, balance, stoop, kneel, crouch or crawl. There are no manipulative limitations. Assume that the person has had only one eye since childhood, but that she has 20/20 visual acuity in the remaining eye and no visual field defects in the remaining eye. *There are obviously visual field defects because of the absence of the left eye.* Assume that there are no communicative limitations and no environmental limitations other than a need to avoid working at heights or around moving machinery.

(R. at 60-61 (emphasis added).) Based upon the given conditions, the VE testified that several positions existed which the hypothetical individual could perform, including cafeteria attendant (120,000 positions in the national economy and 6,800 positions in Virginia); school bus monitor (135,000 positions in the national economy and 4,300 positions in Virginia); and security clerk (144,000 positions in the national economy and 3,400 positions in Virginia).

8

The ALJ then adjusted the hypothetical slightly and posed the same question to the VE. According to the new hypothetical, all conditions were the same, except that the VE was asked to assume that the person could stand or walk no more than four hours in an eight-hour workday. (R. at 62.) The VE responded that the security clerk and school bus monitor positions would still apply to such a hypothetical individual and added the position of information clerk (98,000 positions in the national economy and 2,100 positions in Virginia). (R. at 62-63.)

Counsel for Plaintiff further examined the VE about whether the identified positions were appropriate given Plaintiff's limitations, but counsel did not challenge the VE's opinion that Plaintiff's former employment as a housekeeper is generally light exertion labor pursuant to the Dictionary of Occupational Titles ("DOT"). (R. at 60, 64-87.) After cross examination, the position of cafeteria attendant was eliminated as a possibility, because it would require more than four hours of standing in an eight-hour workday. (R. at 67.) Likewise, the position of school bus monitor was eliminated, because it provides only part-time employment. (R. at 69.)

With regard to the position of information clerk, the VE testified that the amount of time standing during an eight-hour workday varies, but that approximately half of the positions would require Plaintiff to stand for more than four hours in an eight-hour workday, but the other half would not. (R. at 70-73.) Such a circumstance would result in a total of 49,000 information clerk positions being available in the national economy with 1,050 such positions in Virginia. (*See* R. at 72-73.) Plaintiff did not challenge whether the VE's testimony regarding security clerk would be similarly affected by the distinction between four versus six hours of standing in an eight-hour workday.[9]

---

[9] Additional positions were also offered by the VE after further examination by the ALJ. (R. at 76-80.) However, those positions are not relevant to the arguments before the Court and

### III. QUESTION PRESENTED

Is the Commissioner's decision that Plaintiff is not entitled to benefits supported by substantial evidence on the record and the application of the correct legal standard?

### IV. STANDARD OF REVIEW

In reviewing the Commissioner's decision to deny benefits, the Court is limited to determining whether the Commissioner's decision was supported by substantial evidence on the record and whether the proper legal standards were applied in evaluating the evidence. *Hancock v. Astrue*, __F.3d__, 2012 U.S. App. LEXIS 128, at *2 (4th Cir. Jan. 5, 2012) (citing *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005)). Substantial evidence is more than a scintilla, less than a preponderance, and is the kind of relevant evidence a reasonable mind could accept as adequate to support a conclusion. *Hancock*, 2012 U.S. App. LEXIS 128, at *2; *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996) (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).

To determine whether substantial evidence exists, the Court is required to examine the record as a whole, but it may not "'undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [ALJ].'" *Hancock*, 2012 U.S. App. LEXIS 128, at *2-3; *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001) (quoting *Craig*, 76 F.3d at 589). In considering the decision of the Commissioner based on the record as a whole, the Court must "'take into account whatever in the record fairly detracts from its weight.'" *Breeden v. Weinberger*, 493 F.2d 1002, 1007 (4th Cir. 1974) (quoting *Universal Camera Corp. v. N.L.R.B.*, 340 U.S. 474, 488 (1951)). The Commissioner's findings as to any fact — if the findings are supported by substantial evidence — are conclusive and must be affirmed regardless of whether the reviewing court disagrees with such findings. *Hancock*, 2012 U.S. App. LEXIS

---

consideration of those additional positions would not alter this Court's analysis. Accordingly, the Court shall not set forth such testimony as part of its summary herein.

128, at *14 (citation omitted).  If the ALJ's determination is not supported by substantial

evidence on the record or if the ALJ has made an error of law, the Court must reverse the

decision.  *Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987).

A sequential evaluation of a claimant's work and medical history is required to determine

if a claimant is eligible for benefits.  20 C.F.R. §§ 416.920, 404.1520; *Mastro*, 270 F.3d at 177.

The analysis is conducted for the Commissioner by the ALJ, and it is that process that a court

must examine on appeal to determine whether the correct legal standards were applied and

whether the resulting decision of the Commissioner is supported by substantial evidence on the

record.

The first step in the sequence is to determine whether the claimant was working at the

time of the application and, if so, whether the work constituted "substantial gainful activity"

("SGA").[10]  20 C.F.R. §§ 416.920(b), 404.1520(b).  If a claimant's work constitutes SGA, the

analysis ends and the claimant must be found "not disabled," regardless of any medical

condition.  *Id.*  If the claimant establishes that she did not engage in SGA, the second step of the

analysis requires her to prove that she has "a severe impairment . . . or combination of

impairments which significantly limit[s] [her] physical or mental ability to do basic work

activities."  20 C.F.R. § 416.920(c); *see also* 20 C.F.R. § 404.1520(c).  To qualify as a severe

impairment that entitles one to benefits under the Act, it must cause more than a minimal effect

on one's ability to function.  20 C.F.R. § 404.1520(c).

---

[10] SGA is work that is both substantial and gainful as defined by the Agency in the C.F.R. Substantial work activity is "work activity that involves doing significant physical or mental activities.  Your work may be substantial even if it is done on a part-time basis or if you do less, get paid less, or have less responsibility than when you worked before."  20 C.F.R. § 404.1572(a).  Gainful work activity is work activity done for "pay or profit, whether or not a profit is realized."  20 C.F.R. § 404.1572(b).  Taking care of oneself, performing household tasks or hobbies, therapy or school attendance, and the like are not generally considered substantial gainful activities.  20 C.F.R. § 404.1572(c).

At the third step, if the claimant has an impairment that meets or equals an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (listing of impairments) and lasts, or is expected to last, for at least twelve months or result in death, it constitutes a qualifying impairment and the analysis ends. 20 C.F.R. §§ 416.920(d), 404.1520(d). If the impairment does not meet or equal a listed impairment, then the evaluation proceeds to the fourth step in which the ALJ is required to determine whether the claimant can return to her past relevant work[11] based on an assessment of the claimant's residual functional capacity ("RFC")[12] and the "physical and mental demands of work [the claimant] has done in the past." 20 C.F.R. §§ 416.920(e), 404.1520(e). If such work can be performed, then benefits will not be awarded. *Id.* The burden of proof remains with the claimant through step four of the analysis, such that she must prove that her limitations preclude her from past relevant work. *Bowen v. Yuckert,* 482 U.S. 137, 146 n.5 (1987); *Hancock,* 2012 U.S. App. LEXIS 128, at *3 (citation omitted).

However, if the claimant cannot perform her past work, the burden then shifts to the Commissioner at the fifth step to show that, considering the claimant's age, education, work experience, and RFC, the claimant is capable of performing other work that is available in significant numbers in the national economy. 20 C.F.R. §§ 416.920(f), 404.1520(f); *Hancock,* 2012 U.S. App. LEXIS 128, at *3; *Powers v. Apfel,* 207 F.3d 431, 436 (7th Cir. 2000) (citing

---

[11] Past relevant work is defined as SGA in the past fifteen years that lasted long enough for an individual to learn the basic job functions involved. 20 C.F.R. §§ 416.965(a), 404.1565(a).

[12] RFC is defined as "an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis. A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule." SSR-96-8p. When assessing the RFC, the adjudicator must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis (*i.e.,* 8 hours a day, 5 days a week, or an equivalent work schedule), and describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record. *Id.* (footnote omitted).

*Bowen*, 482 U.S. at 146 n.5 (1987)). The Commissioner can carry his burden in the final step with the testimony of a vocational expert. When a VE is called to testify, the ALJ's function is to pose hypothetical questions that accurately represent the claimant's RFC based on all evidence on record and a fair description of all of the claimant's impairments, so that the VE can offer testimony about any jobs existing in the national economy that the claimant can perform. *Walker v. Bowen*, 889 F.2d 47, 50 (4th Cir. 1989). Only when the hypothetical posed represents *all* of the claimant's substantiated impairments will the testimony of the VE be "relevant or helpful." *Id.* If the ALJ finds that the claimant is not capable of SGA, then the claimant is found to be disabled and is accordingly entitled to benefits. 20 C.F.R. §§ 416.920(f)(1), 404.1520(f)(1).

## V. ANALYSIS

The ALJ found at step one that Plaintiff had not engaged in SGA since the alleged onset of her disability. (R. at 10.) At steps two and three, the ALJ found that Plaintiff had the severe impairments of left eye enucleation,[13] osteoarthritis,[14] degenerative disc disease,[15] and diabetes

---

[13] Left eye enucleation simply refers to the fact that Plaintiff's left eye has been completely removed. *Dorland's* at 628.

[14] Osteoarthritis is defined as "a noninflammatory degenerative joint disease seen mainly in older persons, characterized by degeneration of the articular cartilage, hypertrophy of bone at the margins, and changes in the synovial membrane. It is accompanied by pain, usually after prolonged activity, and stiffness, particularly in the morning or with inactivity." *Dorland's* at 1344.

[15] "Degenerative disc disease is not really a disease but a term used to describe the normal changes in your spinal discs as you age. Degenerative disc disease can take place throughout the spine, but it most often occurs in the discs in the lower back (lumbar region) and the neck (cervical region)." WebMD.com, http://www.webmd.com/back-pain/tc/degenerative-disc-disease-topic-overview (last visited Jan. 24, 2012).

mellitus,[16] but that these impairments did not meet or equal any listing in 20 C.F.R. Part 404, Subpart P, Appendix 1, as required for the award of benefits at that stage. (R. at 10-11.) The ALJ next determined that Plaintiff had the RFC to perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b), except that she cannot climb ladders, ropes, or scaffolding; she must avoid hazards such as heights and moving machinery; she can only occasionally climb stairs, balance, stoop, kneel, crouch and crawl; and, she can perform only those jobs that require monocular vision, as Plaintiff has had vision in only one eye since childhood. (R. at 12, 16.) The ALJ also noted that there are no limitations with regard to manipulation, communication, pushing, or pulling. (R. at 12, 16.) He further noted that Plaintiff has no functional limitations in her remaining eye, such that any visual limitations are solely the result of Plaintiff's monocular condition. (R. at 16.)

The ALJ then determined at step four of the analysis that Plaintiff could perform her past relevant work as a housekeeper, at least in the manner in which such work is generally performed. (R. at 16.) The conclusion was based on the testimony of a VE who explained that claimant's work as a housekeeper, as it is classified in the Dictionary of Occupational Tables ("DOT"), and as typically performed, involves light, unskilled work. (R. at 16, 60.) Thus, at step four, the ALJ concluded that Plaintiff was not disabled so as to be entitled to benefits. (R. at 16.)

Even though he was not required to do so in light of his step 4 findings, the ALJ proceeded to conduct the analysis required at step five. At step five, after considering Plaintiff's age, education, work experience and RFC, the ALJ found that there are other occupations which

---

[16] Diabetes Mellitus is "a chronic syndrome of impaired carbohydrate, protein, and fat metabolism owing to insufficient secretion of insulin or to target tissue insulin resistance." *Dorland's* at 506.

exist in significant numbers in the national economy that Plaintiff could perform. (R. at 16.) Specifically relying on the testimony of the VE, the ALJ concluded that Plaintiff, regardless of her limitations, could perform the work of a school bus monitor (with approximately 4,300 jobs regionally and 135,000 jobs in the national economy), security clerk (3,400 jobs regionally and 144,000 jobs nationally), and information clerk (2,100 jobs regionally and 98,000 jobs nationally). (R. at 17.) And although the ALJ did not accept Plaintiff's premise that she could not stand in excess of four hours during an eight-hour workday, the VE testified that such limitation would only impact the informational clerk position by reducing the total number of jobs by half. (R. at 17, 72-73.) Thus, on the alternative basis that Plaintiff is capable of making a successful adjustment to other work that exists in significant number in the national economy, the ALJ concluded that Plaintiff is not disabled. (R. at 18.)

Plaintiff moves for a finding that she is entitled to benefits as a matter of law, or in the alternative, she seeks reversal and remand for additional administrative proceedings. (Pl.'s Br. at 22.) In support of her position, Plaintiff argues that: (1) the ALJ neglected to account for Plaintiff's visual limitations in his RFC determination; (2) it was "irrational"[17] for the ALJ to credit only portions of the consulting physicians' opinions and to completely discredit the treating physicians' opinion; (3) substantial evidence does not support the ALJ's finding that Plaintiff could perform her past relevant work as a housekeeper; and, (4) substantial evidence does not support the ALJ's finding that employment as an informational clerk or school bus monitor would constitute substantial gainful employment for which Plaintiff would be qualified,

---

[17] The Court notes that Plaintiff referred to the ALJ's decision as "irrational" on no fewer than eleven (11) occasions in her brief. "Rationality" is not the proper legal standard of review for cases of this type. Accordingly, the Court shall construe Plaintiff's several references to the ALJ's "irrationality" as assertions that "substantial evidence" did not support the subject findings. *See Hancock*, 2012 U.S. App. LEXIS 128, at *2.

given her RFC. (Pl.'s Br. at 15-21.) Defendant argues in opposition that the Commissioner's final decision is supported by substantial evidence and application of the correct legal standard such that it should be affirmed. (Def.'s Br. at 16-23.) The Court agrees with the Defendant, because there exists substantial evidence in the record supporting the ALJ's findings and the proper legal rules were applied.

A.    **Substantial Evidence Supports the ALJ's Visual Limitation Findings**

Plaintiff argues that the ALJ "never included any visual restrictions whatsoever" when he posed the hypothetical limitations to the VE. (Pl.'s Br. at 18.) However, such is not the case. As with the first hypothetical, the ALJ specifically instructed the VE to "[a]ssume that the person has had only one eye since childhood, but that she has 20/20 visual acuity in the remaining eye and no visual field defects in the remaining eye. *There are obviously field defects because of the absence of the left eye.*" (R. at 61 (emphasis added).) Moreover, when posing the second hypothetical to the VE, the ALJ again instructed that "[t]he individual has only one eye and what I said in the first hypothetical about the remaining vision in the remaining eye continues to apply." (R. at 62.) Thus, the question is not whether the ALJ included visual limitations in his hypotheticals — he did. Instead, the question is whether the particular limitation set forth is supported by substantial evidence — and it is.

First, it should be noted that Plaintiff's contentions regarding the treating physician opinions, discussed more fully *infra* at Section V(B), have no bearing on the issue of visual limitations. While Dr. Wein opined in conclusory fashion that Plaintiff is "totally disabled," he did not specifically identify any visual limitations aside from blindness of the left eye, which the ALJ incorporated at every stage of the analysis. (R. at 363, 367-68.) Thus, there exists no evidence from Dr. Wein that Plaintiff suffers from any visual limitations in her right eye.

16

The most significant evidence of Plaintiff's visual limitations arises from Dr. Newell's evaluation, especially when considered together with Dr. Constant's analysis. Based on his review of Plaintiff's records from the Virginia Eye Institute and his own evaluation of Plaintiff's right eye, Dr. Newell concluded that there exists no limitations of her right eye. (R. at 331.) He specifically emphasized the fact that Plaintiff had been found to have 20/20 vision in her right eye, so long as she was wearing her corrective lenses. (R. at 331.) Contrary to Plaintiff's arguments, such findings are consistent with those of Dr. Constant. While Dr. Constant marked boxes to indicate visual limitations, simply "checking the box" does not indicate whether such limitations are based on the left eye blindness or some other unknown defect with Plaintiff's right eye. (R. at 335.) In explaining his findings, Dr. Constant specifically noted the same 20/20 right eye acuity that Dr. Newell emphasized, noting also the lack of any diagnosis of diabetic retinopathy in Plaintiff's healthy eye. (R. at 338.) Dr. Constant provided no further discussion to suggest that he disagreed with Dr. Newell's more detailed evaluation of Plaintiff's visual limitations. (R. at 338.) Accordingly, the well-reasoned medical opinions of Dr. Newell and Dr. Constant certainly constitute "substantial evidence" for purposes of the Court's review. *Hancock*, 2012 U.S. App. LEXIS 128, at *2 (defining "substantial evidence" as "more than a mere scintilla of evidence but [] less than a preponderance").

Moreover, Plaintiff's testimony at the hearing is insufficient to otherwise establish any visual limitations in her right eye. It must be remembered that Plaintiff bears the burden of establishing those limitations which must rise to the level of a "severe impairment" that "significantly limit[s] [her] physical or mental ability" to do work-related activities. *Bowen*, 482 U.S. at 146 n.5; 20 C.F.R. § 416.920(c). Plaintiff's sole testimony of any limitation in her right eye is that, once or twice each day, it becomes "blurry" for a few seconds, but clearing after

17

blinking and rubbing the eye. Such minor irritation cannot be said to impact Plaintiff's ability to be employed. *See* 20 C.F.R. § 404.1520(c) ("impairment(s) which significantly limit[] your physical or mental ability to do basic work activit[y]"). At the hearing, Plaintiff provided no testimony as to how her abbreviated episodes of blurry vision impact her ability to perform work. Accordingly, her testimony does not undermine the substantial medical evidence that her right eye is healthy, functional, and sufficient for her to engage in the designated positions.

The Court also notes that Plaintiff's monocular condition, alone, cannot be said to so impair her vision to rise to the level of a "severe impairment . . . significantly limit[ing] [her] physical or mental ability" to be employed. *Bowen*, 482 U.S. at 146 n.5; 20 C.F.R § 416.920(c). As she testified, Plaintiff worked for at least ten (10) years as a housekeeper well after she lost her eye. (R. at 35.) If, as the record suggests, she was able to work with only her right eye and that eye remains healthy, then there exists substantial evidence supporting the ALJ's finding that she could perform her past relevant work regardless of her left eye blindness.

Accordingly, the Court finds that the ALJ appropriately accounted for Plaintiff's visual limitations and, therefore, recommends that his decision be affirmed on that basis.

### B.    Substantial Evidence Supports the ALJ's Assessment of Physician Opinions

The ALJ gave great weight to the opinion of Dr. Newell, finding it to be generally consistent with the medical evidence of record. (R. at 14.) At the same time, he found that Plaintiff's treating examiners' objective findings did not support the severity of limitations alleged by Plaintiff. (R. at 15.) He also gave "appropriate" weight to the opinions of the state agency physicians and mental health expert, finding that the opinions were "generally consistent with the medical evidence of record." (R. at 15.) Plaintiff challenges such findings, arguing that "the ALJ completely disregarded the treating physician's opinion." (Pl.'s Br. at 18.)

18

Although it would have been "error to simply disregard the opinion of Dr. Wein," as Plaintiff suggests, the ALJ properly considered Dr. Wein's opinions — on one occasion stating that she was temporarily disabled (R. at 371) and then finding complete disability (R. at 368) — and then reconciled Dr. Wein's opinions with the other evidence in the record. Specifically, the ALJ was required to reconcile conflicting opinions offered by Dr. Wein and the other physicians. Indeed, when the record contains a number of different medical opinions (as this case does), the ALJ is commanded to review the entirety of the record and assign appropriate weight to all of the evidence involved, viewing the record as a whole. 20 C.F.R. § 416.927(c)(2), (d).

Dr. Wein's opinions are treated no differently than the other evidence because, when viewed together with the remainder of the record, the ALJ was permitted to afford his opinion less weight. Under the applicable regulations and case law, a treating physician's opinion must be given controlling weight *if it is well-supported by medically-acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the record. Craig*, 76 F.3d at 590 (emphasis added); 20 C.F.R. § 404.1527(d)(3)-(4), (e). Indeed, to accept Plaintiff's view that the opinion of a treating physician as to disability is always dispositive on the issue would surrender the responsibility to make this legal judgment to a physician, who does not necessarily possess expertise in the area of vocational skills or the benefit of the vocational expert's opinion. *See* SSR 96-5p, 1996 WL 374183, at *2 (S.S.A.) ("Giving controlling weight to such opinions would, in effect, confer upon the treating source the authority to make the determination or decision about whether an individual is under a disability").

Here, the ALJ dispassionately weighed Dr. Wein's differing opinions against the other evidence in the record, most notably the analysis of Dr. Newell, who was retained to provide an

19

independent opinion of Plaintiff's condition after examination. In contrast to Dr. Wein's

somewhat conclusory findings, Dr. Newell explained his findings in greater detail —findings

that are well-supported by the other evidence in the record. (R. at 329-31.) For example, Dr.

Newell detailed the outcome of Plaintiff's physical, including a "Snellel eye exam" that revealed

Plaintiff's 20/20 vision when wearing corrective lenses. (R. at 330.) He also spent considerable

time in his report detailing the exact symptoms of Plaintiff's diabetes, including the lack of any

resulting retinopathy. (R. at 329.) And unlike Dr. Wein's report, Dr. Newell's "General

Findings" and "Functional Assessment" identified specific examination results on which he

relied to form his opinion. (R. at 331.) The difference in detail between Dr. Newell's report and

that of Dr. Wein demonstrate exactly how the objective medical record tends to support Dr.

Newell's opinion, and is inconsistent with that of Dr. Wein. In light of Dr. Newell's findings

and the other evidence in the record, the ALJ was not required to blindly accept Dr. Wein's

conclusory opinions. *Craig*, 76 F.3d at 590 ("If a physician's opinion is not supported by

clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded

significantly less weight").

      The ALJ's evaluation of conflicting medical opinions is supported by substantial

evidence. Thus, the ALJ did not err by simply adopting the (conflicting) opinions of Plaintiff's

treating physician. Consequently, the Court recommends that the ALJ's decision be affirmed on

this basis.

### C.     Substantial Evidence Supports the ALJ's Finding that Plaintiff Can Perform her Past Relevant Work as a Housekeeper

      Plaintiff asserts that the "uncontroverted" evidence establishes her duties as a

housekeeper, frequently requiring her to lift objects weighing fifty (50) pounds. (R. at 206.)

This assertion, however, rests solely on her own statements. The Court does not agree that this

was the *sole* evidence on the subject.  Indeed, the VE specifically testified that Plaintiff's past relevant work as a housekeeper constituted unskilled, "light" exertion labor.  (R. at 60.)  As the ALJ explained in his decision, a requirement that Plaintiff lift fifty (50) pounds would have placed her work as a housekeeper in the category of "medium," as opposed to "light" exertion work.  (R. at 16.)

To satisfy the Commissioner's burden at step four of the analysis, the ALJ was not required to find that Plaintiff could perform her past relevant work "as [she] performed it in the past" — it was only necessary that he found that she could perform housekeeping work "as it is generally required by employers in the national economy." *Pass v. Chater*, 65 F.3d 1200, 1207 (4th Cir. 1995).  That is exactly the analysis that the ALJ applied.  He acknowledged that Plaintiff testified to frequently carrying fifty (50) pounds when she had previously worked as a housekeeper; however, he emphasized the VE's testimony, based on the Dictionary of Occupational Tables, that housekeeping work is "typically performed" as light, unskilled work. (R. at 16.)

Therefore, the ALJ applied the proper legal standard and concluded that Plaintiff could perform her past relevant work as a housekeeper.  Accordingly, the Court recommends that the ALJ's decision be affirmed on that basis.

### D.      Substantial Evidence Supports the ALJ's Finding that Significant Alternative Employment Exists in the National Economy

The ALJ was not required to perform the analysis at step five after concluding at step four that Plaintiff was not disabled.  However, apparently for the purposes of appellate review, the ALJ conducted the step five analysis.  Accordingly, the Court will review his analysis and conclusions as to that final issue.

At the fifth step of the sequential analysis, the Commissioner must show that, considering the claimant's age, education, work experience, and RFC, the claimant is capable of performing other work that is available in significant numbers in the national economy. 20 C.F.R. §§ 416.920(f), 404.1520(f). The Commissioner can carry his burden in the final step with the testimony of a VE. Moreover, there is no "bright line" number of jobs required to satisfy the burden -- as few as one hundred ten (110) jobs within a given region has been found to be sufficient. *Hicks v. Califano*, 600 F.2d 1048, 1051 n.2 (4th Cir. 1979).

As a preliminary matter, the Court notes that Plaintiff has not challenged whether she could perform the functions of a security clerk. The VE specifically testified that there were 144,000 such positions in the national economy and 3,400 such positions available in Virginia. (R. at 61.) The existence of the security clerk positions alone constitutes substantial evidence that there exists other work in significant numbers in the national economy that she could perform. (R. at 18.)

Plaintiff argues that the VE's testimony concerning her ability to perform the jobs of information clerk and school bus monitor failed to account for her purported RFC limiting her to four hours of standing and walking in an eight-hour workday. Although the ALJ did not necessarily accept such a RFC, for sake of argument, his second hypothetical included this very limitation. (R. at 17.) Even accounting for the limitation that Plaintiff could only stand and walk for no more than four hours, the VE testified that she would nevertheless retain the RFC to perform approximately half of the information clerk positions available in both the national and local economy. Reducing the number of jobs by half, this still amounts to 49,000 information clerk positions nationally and 1,050 positions locally. (R. at 72-73.) The VE's testimony that

22

half of the positions would *not* require more than four hours of standing and walking is sufficient to meet the required threshold. *See Hicks*, 600 F.2d at 1051 n.2.

Accordingly, for the reasons stated herein, the Court recommends that the ALJ's decision be affirmed on the alternative basis of his step five analysis.

## VI. CONCLUSION

Based on the foregoing analysis, it is the recommendation of this Court that Plaintiff's Motion for Summary Judgment (ECF No. 11) and Motion to Remand (ECF No. 12) be DENIED; that Defendant's Motion for Summary Judgment (ECF No. 14) be GRANTED; and, that the final decision of the Commissioner be AFFIRMED.

Let the Clerk forward a copy of this Report and Recommendation to the Honorable James R. Spencer and to all counsel of record.

## NOTICE TO PARTIES

**Failure to file written objections to the proposed findings, conclusions and recommendations of the Magistrate Judge contained in the foregoing report within fourteen (14) days after being served with a copy of this report may result in the waiver of any right to a *de novo* review of the determinations contained in the report and such failure shall bar you from attacking on appeal the findings and conclusions accepted and adopted by the District Judge except upon grounds of plain error.**

_____ /s/

David J. Novak
United States Magistrate Judge

Richmond, Virginia
Dated: February 23, 2012